VAN ZANDT, JACOBS & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6863, 11605.   Promulgated October 7, 1927.

1. Evidence held insufficient to establish an invested capital in excess of the amount allowed by the Commissioner.
2. Corporations held to be affiliated.

*L. F. Speer, Esq.*, and *Fred A. Woodis, Esq.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

This appeal is from a determination by the Commissioner of deficiencies in income and excess-profits taxes for the years 1918, 1919, and 1921, in the amounts of $11,153.34, $2,149.93, and $6,267.90. It is alleged by the petitioner that the Commissioner erred in refusing to permit it and the Burt Shirt Co. to file consolidated returns in each of the taxable years and in the computation of the invested capital for 1918 and 1919 in disallowing a part of the value claimed for good will.

FINDINGS OF FACT.

Petitioner is a corporation organized under the laws of the State of New York, with its principal offices and place of business at Troy. It was organized on May 9, 1904, by Clarence E. Van Zandt, Charles E. Van Zandt, Walter H. Staude, and Harry E. Shumway as incorporators, with an authorized capital stock of $500,000.

The corporation was formed to take over the business of a certain partnership theretofore engaged in the manufacture of collars at Troy, N. Y. The partnership was composed of J. E. Jacobs, W. H. Staude, and Clarence E. Van Zandt. Jacobs died on July 28, 1903. The court appointed an appraiser for his estate and the value of the partnership was appraised to determine the interest of the de-

ceased partner. The partnership books were closed January 1, 1904, on the basis of that appraisal. The present worth of the partnership as of January 1, 1904, based on such appraisal and excluding any value for good will was as follows: J. E. Jacobs, $174,597.13; Clarence E. Van Zandt, $174,597.13; W. H. Staude, $6,891.20, making a total of $356,085.46.

After the death of Jacobs, the business was carried on by the surviving partners and the executors of Jacobs' estate. On May 25, 1904, the board of directors of petitioner resolved to purchase on or before June 30, 1904, all of the property real and personal, including good will, of the late partnership, and including all undivided profits accrued on May 25, 1904, and all profits that might thereafter accrue.

On June 18, 1904, the corporation acquired the business, the bills of sale reciting a grant, bargain, sale and conveyance of the business, property, assets and rights, legal and equitable, and of every name and nature, of the late firm of Van Zandt, Jacobs & Co., together with all the earnings, profits, surplus, accumulations and increase accrued and undivided on May 25, 1904, or that had since or might thereafter accrue thereon or thereto.

The company was organized with an authorized capital stock of $350,000 common and $150,000 preferred. The preferred stock was sold for cash at par mainly to persons not theretofore interested in the business. Common stock was sold at par for cash to the following:

| | |
|---|---:|
| Clarence E. Van Zandt | $23,300 |
| Charles E. Van Zandt, a son of Clarence | 4,700 |
| Harry E. Shumway | 2,000 |
| | 30,000 |

Common stock of the par value of $279,200 and $13,300 was issued to Clarence E. Van Zandt and Staude, respectively, for their interest in the partnership assets and good will, including all accumulated earnings. One hundred and sixty-five thousand dollars in cash was paid Jacob's estate for his interest in the partnership assets and good will, including all accumulated earnings. The corporation also acquired from Clarence E. Van Zandt and Jacobs' estate certain real estate used in the business, paying the estate $15,000 in cash and issuing to Van Zandt additional common stock of the par value of $27,500.

No appraisal of the assets was made at the time they were taken over by the corporation. Assets were entered on the books of the corporation at the value fixed in the appraisal of Jacobs' estate to which was added an item of good will and profits of $131,414.54.

The balance sheet was set up as of January 1, 1904, as follows:

| | | | |
|---|---:|---|---:|
| Cash (deficit) | $24,332.76 | Capital stock | $500,000.00 |
| Accounts receivable | 96,334.84 | Mortgages | 42,500.00 |
| Bond account | 500.00 | Bills payable | 39,557.04 |
| Real estate | 85,000.00 | Estate of J. E. Jacobs | 39.36 |
| Merchandise | 276,901.15 | Accounts payable | 9,399.02 |
| Patterns | 1,536.21 | Triangle laundry | 1,991.42 |
| Fixtures | 26,132.86 | | |
| Good will and profits | 131,414.54 | | |
| | 593,486.84 | | 593,486.84 |

On July 1, 1904, it was ascertained that the profits from January 1, 1904 to July 1, 1904, were $90,943.84 and this amount was charged against the account known as good will and profits, reducing such account to $40,470.70. In computing invested capital for 1918 and 1919, the Commissioner has allowed $409,056.16, being the par value of the capital stock less the profits from January 1, 1904, to July 1, 1904.

Petitioner manufactured collars while the Burt Shirt Co. manufactured shirts. The goods of both companies were manufactured in the same building and both companies had their laundry work done in the same building. Clarence Van Zandt was president of Van Zandt, Jacobs & Co. and treasurer of the Burt Shirt Co. W. H. Staude was vice president of Van Zandt, Jacobs & Co., and president of the Burt Shirt Co. Charles Van Zandt was secretary of both companies. H. E. Shumway was treasurer of Van Zandt, Jacobs & Co. The board of directors of Van Zandt, Jacobs & Co. was composed of the same men who were the board of directors of the Burt Shirt Co., with the exception of one man in each company.

All the material going into the manufacture of shirts was charged to the Burt Shirt Co., but was purchased with the credit of Van Zandt, Jacobs & Co. The Burt Shirt Co. was known by the trade as the shirt department of Van Zandt's. The men who bought the merchandise for Burt shirts were the same men who bought the Van Zandt merchandise and the products of both companies were sold by the same salesmen. The same parties supervised the manufacturing processes in both plants. The officers of the Burt Shirt Co. were paid salaries only by Van Zandt, Jacobs & Co. The president of the latter company performed the duties of treasurer of the Burt Shirt Co. for a salary paid by Van Zandt, Jacobs & Co. The accounting for both companies was done in the same general office by the same persons, although there were individual bookkeepers for various phases and although each company had a separate set of books, so that the operations of each company could be correctly

ascertained at any time. There was one credit manager for both companies. Clarence Van Zandt handled the financial matters of both corporations. Van Zandt, Jacobs & Co. continuously furnished funds to the Burt Shirt Co. when it was out of funds. The former company made loans to the latter company in 1918, 1919, and 1921. When the Burt Shirt Co. went out of business and liquidated, Van Zandt, Jacobs & Co. paid its debts.

The stock ownership of the two companies for the years 1918, 1919, and 1921 was as follows:

|  | Van Zandt, Jacobs & Co. | | Burt Shirt Co. | |
|---|---|---|---|---|
|  | Common | Preferred | Common | Preferred |
| Clarence Van Zandt | 3,300 | 15 | 510 | 120 |
| Marjorie Van Zandt | 0 | 60 | 0 | 90 |
| Gladys Van Zandt | 0 | 65 | 0 | 85 |
| Wife of Clarence Van Zandt | 0 | 200 | 0 | 0 |
| Edna Coonradt | 0 | 43 | 90 | 10 |
| Charles Van Zandt | 47 | 15 | 99 | 30 |
| H. E. Shumway | 20 | 0 | 10 | 0 |
| W. H. Staude | 133 | 5 | 40 | 0 |
| Van Zandt, Jacobs & Co | 0 | 4 | 0 | 140 |
| Burt Shirt Co | 0 | 0 | 5 | 5 |
| Others | 0 | 1,093 | 0 | 20 |
|  | 3,500 | 1,500 | 664 | 500 |

Dividends have been regularly paid on the preferred stock of petitioner since organization. Outside interests owned 1,093 shares of the preferred stock of petitioner and 20 shares of the preferred stock of the Burt Shirt Co. Such preferred stock was redeemable at $107 per share on 30 days' notice. Marjorie and Gladys Van Zandt were the daughters of Clarence Van Zandt, who gave them the stock listed in their names. The stock in the names of his wife and of his sister, Edna Coonradt was likewise given them by Clarence Van Zandt. The stock owned by these four persons was never voted during the years involved in this appeal. Both the preferred and common stock of both companies had voting rights. The preferred stock of petitioner was sold to the public through a bank. The other holders of the preferred stock of the two companies were not represented either in person or by proxy at the stockholders' meetings in 1917, 1918, and 1919, except one owner of 50 shares of the preferred stock of petitioner, who was also one of petitioner's directors, and never expressed any opposition to the management or policies of the corporations.

### OPINION.

PHILLIPS: With respect to the issue involving invested capital, it is alleged that the Commissioner erred in disallowing $90,943.84, the amount of the profit of the business for six months during most of

which time the business was conducted by the predecessor partnership. The amount seems to have been disallowed without any reason other than that it had been charged off the books. The Commissioner does not now contend that the profits of the business from January 1, 1904, to July 1, 1904, may not be included in the invested capital, either as assets paid in for stock or as earned surplus. His present contention is more fundamental; namely, that the assets received in exchange for stock did not have a value equal to the par value of the stock. His counsel points out that the interest of Jacobs was appraised at $174,597.13, without giving any value to good will; that such interest was acquired for $165,000 and that for an equal interest owned by Van Zandt the company issued to him stock of the par value of $279,200. He contends that this sale of Jacobs' interest, made in a transaction between parties dealing at arm's length, demonstrates that the assets had no value in excess of that at which the tangibles were carried on the books and also fixes the market value of the same interest acquired from Van Zandt. The contention appears to be sound. The question before us is not whether the profits of the business, whether earned before or after the purchase by the corporation, may be included in the invested capital, but whether the assets paid in for stock had a value in excess of the amount allowed by the Commissioner. There is nothing in the evidence which leads us to believe that they had; in fact, so far as there is evidence, it would lead us to believe that invested capital has been overstated.

At the close of the hearing counsel for the respondent moved to amend his answer to conform to proof that invested capital had been overstated. While the proof indicates that such may have been the case, it is too indefinite to permit us to determine that such was the case, or to determine the correct invested capital. The motion is, therefore, denied.

Upon the question of affiliation the record is clear that except for 1,093 shares of the preferred stock of the petitioner in the hands of those not in the family group, the stock of both companies was controlled by the same interests. This outstanding preferred stock had paid its regular dividend since the organization of the company and the holders appear to have been satisfied to leave the conduct of the company with those who had made this possible. It represented something less than 22 per cent of the voting rights in the petitioner corporation. It was interested in the business only to make certain that its dividends were assured. It was first sold through the petitioner's bank. It was listed on no exchange. All the circumstances indicate that it was held for investment. Without objection, these stockholders permitted the two companies to be operated substan-

tially as one. It must be assumed that they did not regard this as in derogation of their own interests. On the liquidation of the Burt Shirt Co. they permitted its losses to be paid by the petitioner. The circumstances indicate that both the common and preferred stockholders must have regarded the two corporations as one business enterprise in which all were interested, either directly or indirectly. It is our opinion that the petitioner and the Burt Shirt Co. are properly to be considered as affiliated corporations, and that the respondent erred in failing to compute their taxes on the basis of a consolidated return.

Reviewed by the Board.

> *Decision will be entered on 20 days' notice, under Rule 50.*